**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PAMELA HANSON,** | ) | **CASE NO.1:06CV2542** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **CITY OF FAIRVIEW PARK, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants' City of Fairview Park, Sergeant John Martin, and Officer Justin Brewer's Motion for Summary Judgment. For the following reasons, the Court grants in part, and denies in part, Defendants' Motions.

**FACTS**

On October 24, 2005 Plaintiff Pamela Hanson ("Mrs. Hanson") returned home from work to find her husband, Scott Hanson ("Mr. Hanson"), asleep in their bedroom. (P. Hanson Dep. at 36). After finding Mr. Hanson had been asleep all day, Mrs. Hanson asked if he had remembered to give their cat diabetes medication. Upon learning he had not, Mrs. Hanson told Mr. Hanson he had been "kind of cranky lately" and said she would take care of the cat. (*Id.*).

1

At this point, Mr. Hanson asked "[W]hy am I the bad guy?," got up, and smashed a table into the bed. (*Id.*). Mr. Hanson then proceeded to destroy the house, breaking furniture, lamps, and appliances, and tearing down a ceiling fan in the bedroom.

After approximately ten minutes, Mrs. Hanson placed a call to Mr. Hanson's mother, Patricia Hanson, hoping she might be able to calm Mr. Hanson. (*Id.* at 45). After hanging up with Mrs. Hanson, Patricia Hanson called Scott's brother Frederick Hanson in Chicago, who then called 911 and asked to be connected to the Fairview Park police. (F. Hanson Dep. at 16). Sergeant John Martin answered Frederick Hanson's call at 6:12 pm, and advised him he would send an officer to the home. (Martin Dep. at 50). During this time, Mr. Hanson had gone into the backyard, and Mrs. Hanson called her own mother and asked her parents to come over. (P. Hanson Dep. at 47). Mr. Hanson then backed his PT Cruiser through the closed garage door and drove it into the side of the house. (*Id.* at 48). Shortly thereafter, Mrs. Hanson's parents arrived and walked toward the garage; Mr. Hanson approached them in the driveway and told them to go away. (L. Kalis Dep. at 13-14). Her parents then entered the house and told Mrs. Hanson to call the police, and she dialed 911 at 6:15 pm.

Sergeant Martin answered Mrs. Hanson's 911 call at 6:15 pm and advised he would send an officer to the house immediately. (Martin Dep. at 66). Sergeant Martin sent a radio dispatch with the Hansons' address at 6:16 pm, and Officer Justin Brewer responded immediately. (*Id.* at 69). Upon arriving at the Hanson residence, Officer Brewer parked his patrol car across the street from the home. (Brewer Dep. at 77). During his deposition, Officer Brewer testified he heard noises coming from behind the residence as he approached, and saw the PT Cruiser "smashed into the house." (*Id.* at 80-87). Officer Brewer walked toward the direction of the

noise, and when he arrived at the garage, he found Mr. Hanson destroying his truck and other items with three golf clubs he was holding.  (*Id*. at 89-91).  After Officer Brewer observed Mr. Hanson throw one of the clubs down, he attempted to get Mr. Hanson's attention by calling to him and alerting him the police were there.  (*Id*. at 97, 140).

At this point, the parties' versions of the events begin to diverge.  Officer Brewer testified Mr. Hanson advanced toward him with two golf clubs in his hands.  (*Id*. at 97).  Officer Brewer began backing up, and yelled at Mr. Hanson to stop several times.  (*Id*. at 139).  Officer Brewer testified Mr. Hanson then charged at him with the golf clubs raised above his head, and said "I'm coming for you."  (*Id*. at 139, 145).  Officer Brewer indicated he could not retreat any further, felt trapped by the PT Cruiser and the fence, and fired his weapon at Mr. Hanson three times.  (*Id*. at 139).

Mrs. Hanson's version of events leading up to the shooting differ from the version set forth by Defendants.  In her response to Defendants' Motion for Summary Judgment, Mrs. Hanson alleges there is a discrepancy as to how fast Mr. Hanson was advancing, whether the PT Cruiser was obstructing Mr. Hanson's retreat, and where the golf clubs in Mr. Hanson's hands were positioned.  Plaintiff claims Officer Brewer varied his account of the events leading up to the shooting several times.  Mrs. Hanson does not seem to suggest that any one of these versions is the correct one; only that there appears to be a discrepancy with regard to the events of that evening.

In his deposition, Officer Brewer testified he drew his weapon once Mr. Hanson started coming toward him.  (*Id*. at 99).  He indicated he drew his weapon because he did not think his ASP (baton) or pepper spray would have been adequate to protect him against Mr. Hanson.

3

(*Id*.). In her complaint, Mrs. Hanson alleges Officer Brewer approached Mr. Hanson with his weapon drawn.

The Hanson's neighbors, Shirley and Marty Cooney, witnessed the incident from their living room window. Mrs. Cooney initially stated in a handwritten report she provided shortly after the incident that she and her husband saw Mr. Hanson approach Officer Brewer, but she did not see if Mr. Hanson was armed. During a police interview the following day, Mrs. Cooney advised the detective conducting the interview she did not see anything in Mr. Hanson's hands. Her husband also advised he did not see anything in Mr. Hanson's hands, but indicated: "[I]t is dark in that area because of the trees." (Exhibit 1 to Plaintiff's Brief in Opposition).

After Officer Brewer fired his weapon at Mr. Hanson, Mr. Hanson fell to the ground. At that point, Officer Brewer checked Mr. Hanson for other weapons, then radioed Sergeant Martin and requested an ambulance and a supervisor. (*Id.* at 122). Officer Brewer stayed with Mr. Hanson until EMS arrived. After Lieutenant Upperman from Fairview Park Police Department arrived, Officer Brewer explained the situation and turned his handgun over to him. (*Id*. at 132). EMS then arrived and transported Mr. Hanson to the hospital. Shortly thereafter members of the Fairview Park Police Department and Westlake Police Department arrived to document the physical evidence at the scene. (Upperman Dep. at 58). A scale diagram prepared by the Westlake Police Department shows two golf clubs lying in close proximity to where Mr. Hanson fell. (*Id*. at 68, 88). Mr. Hanson later died at the hospital.

**SUMMARY JUDGMENT STANDARD**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing the absence of any such genuine issues of material fact.

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. Only disputes over facts that might affect the outcome of the suit will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). That is, only facts that potentially impact the outcome of the suit are considered material.

Pursuant to Federal Rule of Civil Procedure 56(e), once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. An adverse party may not rest upon mere allegations or denials, but must provide a response setting forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e). When a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 250.

In arriving at a resolution on a motion for summary judgment, a court must afford all reasonable inferences, and construe evidence in light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1985). A motion for summary judgment should be granted if there is but one reasonable conclusion. *Anderson*, 477 U.S. at

5

250. If reasonable minds could differ as to the importance of the evidence, however, the matter should go to trial. *Id*. at 250-251.

## ANALYSIS

### 42 U.S.C. § 1983 Claims

In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove two elements. First, he must demonstrate that he was deprived of a right secured by the Constitution or the laws of the United States, and secondly he must demonstrate that the deprivation was caused by a person acting under color of state law. *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). In her complaint, Plaintiff alleges Officer Brewer and Sergeant Martin deprived Mr. Hanson of his right to be free from unreasonable seizures by the use of force, in violation of the Fourth and Fourteenth Amendments of the Constitution, as well as Article 1, § 10 of the Ohio State Constitution and laws and statutes of Ohio. Plaintiff asserts Defendants Brewer and Martin acted intentionally, maliciously and/or in a gross, wanton, unreasonable and/or reckless manner while acting under color of state law. An individual acts under color of state law when he or she exercises power possessed by virtue of state law, and is "clothed with the authority of state law." *Rowe v. State of Tenn.*, 609 F.2d 259, 262 (6th Cir. 1979) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). In this case, both Officer Brewer and Sergeant Martin were on duty at the time of the incident, and were acting within the scope of their employment with the Fairview Park Police Department.

Plaintiff is suing Officer Brewer and Sergeant Martin in their individual, as well as official, capacities. Generally, official-capacity suits represent only another way of pleading an action against the entity of which the officer is an agent. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

6

Suits against state officials in their official capacity should therefore be treated as suits against the state. *Id*. The Eleventh Amendment protects states from suit in federal court, unless the State consents to suit or waives its immunity. Thus, an action against an official in his or her official capacity is no different than an action against the official's office. *Will v. Mich Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiffs can, however, sue individuals in their official capacities for injunctive relief. *Id*.

State officials may also be sued in their individual capacities for purposes of § 1983 claims. *Hafer*, 502 U.S. at 31. State officers are not absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts.' *Id*. Individual capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To establish personal liability in a § 1983 action, a Plaintiff must establish an official caused the deprivation of a federal right while acting under color of state law. *Id*.

**42 U.S.C. § 1983 Claim Against Officer Brewer**

Here, we have no dispute that Officer Brewer was acting under color of state law as a Fairview Park police officer when the shooting occurred. Thus, the inquiry is whether Officer Brewer deprived Mr. Hanson of a federally protected right through use of excessive force. If the Court finds a violation, the Court must then address the issue of Officer Brewer's defense of qualified immunity.

Plaintiff claims Officer Brewer deprived Mr. Hanson of his right to be free from unreasonable searches and seizures by the use of force in violation of the Fourth and Fourteenth Amendments of the United States Constitution. The Fourth Amendment provides a police

7

officer may not seize an unarmed, non-dangerous suspect by killing him, and the Supreme Court has held that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). In cases where a seizure involves the use of deadly force, the intrusiveness is "unmatched and irrevocable." *Id*. The Court in *Garner* held it was unreasonable to kill a "young, slight and unarmed" burglary suspect by shooting him as he attempted to flee when the officer could not reasonably have believed the suspect posed any threat. *Id*. at 21.

In the case at bar, we have two differing versions of the events leading up to the shooting. Specifically, Plaintiff claims Mr. Hanson had nothing in his hands at the time Officer Brewer shot him. Defendants' claim Mr. Hanson was wielding two golf clubs as he advanced toward Officer Brewer. The inquiry required for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether the evidence is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-252. In this case, whether Mr. Hanson had anything in his hands, whether Mr. Hanson was advancing toward Officer Brewer when he was shot, and whether Officer Brewer was penned in by the PT Cruiser are controlling issues, and the parties' differing versions of the events creates genuine issues of material fact. These are factual questions for a jury to decide.

It is impossible for the Court to determine whether Officer Brewer deprived Mr. Hanson of a federally protected right by the use of excessive force without first making a determination as to whether Officer Brewer's conduct was reasonable. Determining the reasonableness of Officer Brewer's conduct and his use of deadly force can only be made after discerning what actually happened that day. In this case, we have conflicting accounts of the events that occurred

leading up to the shooting.  If Mr. Hanson was charging at Officer Brewer with golf clubs, then a reasonable jury could conclude that Officer Brewer was justfied in his use of deadly force.  If, on the other hand, Mr. Hanson had nothing in his hands at the time of the shooting and Officer Brewer shot him three times, a jury could conclude that Officer Brewer's use of force was excessive and unreasonable, resulting in a deprivation of Mr. Hanson's rights.  In light of the conflicting versions of material events in this case, summary judgment is not appropriate as to the § 1983 claim against Officer Brewer at this stage.

**Qualified Immunity As To Officer Brewer**

Government officials performing discretionary functions are generally shielded from liability for civil damages, provided their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is an affirmative defense that must be pleaded by a defendant official.  *Id*. at 815.  Qualified immunity is more than merely a defense to liability; it actually functions as an immunity from suit**.**  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  The primary purpose of affording public officials qualified immunity is to protect them from "undue interference with their duties and from potentially disabling threats of liability."  *Harlow*, 457 U.S. at 806.  Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The relevant inquiry in determining whether qualified immunity is available focuses on whether a reasonable official in the defendant's position would have believed his conduct to be

lawful in light of clearly established law. *Saucier v. Katz*, 533 U.S. 194, 194 (2001). According to the Supreme Court, the threshold question in a qualified immunity inquiry is whether the facts alleged show the officer's conduct violated a constitutional right, when viewed in the light most favorable to the party asserting the injury. *Id*. at 201. If no constitutional right would have been violated, there is no need to further inquire with regard to qualified immunity. *Id*. If, on the other hand, a violation could be established, the next step is to ask whether the right was a clearly established right of which a reasonable person would have known. *Id*.

In this case, the Court is unable to grant qualified immunity as to Officer Brewer because it is not clear whether his conduct violated a constitutional right. Whether or not his conduct passes constitutional muster hinges primarily on whether Mr. Hanson was wielding golf clubs at the time of the shooting, advancing toward Officer Brewer, and whether Officer Brewer was penned in by the PT Cruiser; facts that remain in dispute. A jury must, therefore, make a factual determination before the Court decides to afford Officer Brewer qualified immunity.

**Supervisory Liability Of Sergeant Martin**

With respect to Sergeant Martin, Plaintiff alleges liability under § 1983 based on supervisory liability. In order for a Plaintiff to prevail on a claim of supervisory liability under § 1983, Plaintiff must show more than simply a supervisor's right to control employees, and cannot succeed solely on the theory of *respondeat superior*. *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005). "At a minimum, Plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id*. In this case, there is no evidence Sergeant Martin was involved in Plaintiff's shooting. Sergeant Martin's conduct is limited to the two phone calls he received,

one from Mr. Hanson's brother, and the other from Mrs. Hanson.  Sergeant Martin was not present at the time of the shooting, and did not authorize or encourage Officer Brewer's conduct.  Plaintiff claims Sergeant Martin should have recognized the serious nature of the phone calls he received and sent more than one officer, and relayed more than "general" information about the nature of the situation in his dispatch to the officers.  Plaintiff also asserts Sergeant Martin "deliberately withheld" vital medical and historical information.  Plaintiff's expert, Dr. James O'Keefe, a justice consultant, testified an ambulance and specialized units, or a SWAT team, should have been dispatched to the Hanson residence.  These arguments, however, are unpersuasive, as Sergeant Martin followed the procedure for 911 calls set out in the Policies & Procedures manual.  (Defendants' Motion for Summary Judgment, Exhibit O).  There is nothing in the manual that states Sergeant Martin should have sent an ambulance, relayed any additional information, or responded any differently to the calls he received.  Sergeant Martin did not approve or actively participate in Officer Brewer's alleged misconduct, nor did he handle the calls he received improperly.  Therefore, Plaintiff's § 1983 claim fails as a matter of law, and Sergeant Martin is entitled to summary judgment on the supervisory liability claim.

**State Law Claims**

In addition to her § 1983 and governmental liability claims, Plaintiff also asserts claims for wrongful death, assault, battery, reckless and wanton negligence, and loss of consortium.  The duty of care imposed on police officers is set forth in O.R.C. § 737.11, which provides in part: "The police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority of the municipal corporation, all criminal laws of the state and the United States..."  O.R.C. § 2744.03(A)(6)

11

provides a defense of immunity to employees of political subdivisions, so long as none of the exceptions enumerated in the statute applies. One such exception is when an employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. O.R.C. § 2744(A)(6)(b).

Plaintiff claims the conduct of Officer Brewer and Sergeant Martin fall within the exception to this immunity. Wanton misconduct has been defined as a failure to exercise any care whatsoever. *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St. 3d 351, 356 (1994). The Supreme Court of Ohio has held that mere negligence is not converted into wanton misconduct unless the evidence establishes "a disposition to perversity on the part of the tortfeasor." (*Id*. at 356, quoting *Roszman v. Sammett*, (1971) 26 Ohio St. 2d 94, 96-97). The issue of wanton misconduct is normally a question for the jury; however, the standard for showing wanton misconduct is high. *Id*.

With respect to Officer Brewer, there is a genuine issue of material fact with regard to the events leading up to the shooting. A jury could reasonably find that Officer Brewer's conduct was in fact reckless, and such a finding would, therefore, render any statutory immunity under O.R.C. § 2744.03(A)(6) void. As such, the Court cannot grant summary judgment to Officer Brewer with respect to Plaintiff's tort claims at this juncture.

Plaintiff cannot, however, establish liability as to Sergeant Martin with respect to any of her state law claims. In this case, Sergeant Martin had no duty beyond the general duty imposed by O.R.C. § 737.11 and the common law. He had no duty to relay Frederick Hanson's call verbatim in his dispatch, nor did he have a duty to send an ambulance or a SWAT team to the Hanson residence upon receiving the 911 calls from Frederick Hanson and Pamela Hanson.

There is no heightened duty imposed by statute, common law, or by virtue of any special relationship with the decedent; therefore, Plaintiff's state law claim against Sergeant Martin fails.

Even if the Court were to conclude that Sergeant Martin did, in fact, have a duty, O.R.C. § 2744.03(A)(6) would immunize him from any potential liability.  Sergeant Martin's involvement in this matter is limited to receiving two phone calls, and sending a dispatch requesting a response to the Hanson residence.  Sergeant Martin was not directly involved in any of Officer Brewer's actions, and in fact, had no actual knowledge of the events occurring at the Hanson residence.  His response was reasonable, and he followed the procedures set forth in the Policies & Procedures manual for the City of Fairview Park.  Plaintiff has not presented any evidence that Sergeant Martin's actions rise to the level of wanton misconduct, or even negligence.  In fact, the evidence supports the conclusion that Sergeant Martin reacted reasonably, and in accordance with department policy.

In his report, Dr. O'Keefe, cites to the Ohio Peace Officer Training Commission standards as evidence of a duty imposed on Sergeant Martin.  These standards, however, are couched in suggestive terms, such as "can," and "[w]henever possible." (Plaintiff's Opposition to Motion for Summary Judgment, Exhibit 5).  These are by no means hard and fast rules, but merely suggestions for appropriate responses to various situations.  Additionally, Plaintiff has failed to provide any evidence these Commission standards impose a legal duty under Ohio law.  Therefore, Sergeant Martin is entitled to the immunity afforded in O.R.C. § 2744.03, and his summary judgment is granted with respect to Plaintiff's state claims against him.

**42 U.S.C. § 1983 Claim Against City**

In her complaint, Plaintiff asserts the City of Fairview Park has inadequate policies and training in regard to the proper use of deadly force, and the supervision of its officers. A municipality can be held liable under § 1983 for constitutional violations resulting from its failure to train municipal employees. *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). However, the inadequacy of police training may only serve as the basis for a § 1983 claim where the failure to train amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact. *Id*. at 379. The Supreme Court has held that a municipality cannot be held liable under § 1983 unless a claimant can prove that an unconstitutional municipal policy exists, and that it has been furthered by actions of those who have final policy-making authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988). This means that in order to prevail against a city, a plaintiff must demonstrate not only a constitutional violation at the hands of city employees, but also a city policy or custom relevant to the actions of the city employee. Additionally, the plaintiff must prove a direct causal link between the policy or custom and the alleged constitutional deprivation. *Harris*, 489 U.S. at 385.

In this case, Plaintiff maintains the City of Fairview Park is liable for failing to properly train and supervise its officers, and these inadequate policies were the proximate cause of Scott Hanson's death. Plaintiff supplied a report prepared by Dr. James O'Keefe, a justice consultant, and a Declaration signed by same. Dr. O'Keefe concluded in his report that the Fairview Park Police Department lacked detailed policy, training, access to non-lethal weapons, and supervision in the critical areas of dealing with emotionally disturbed persons, and that these failures caused Mr. Hanson's death. (Plaintiff's Opposition to Motion for Summary Judgment, Exhibit 5). In support of their Motion for Summary Judgment, Defendants' submitted a copy of

14

the Fairview Park Police Department's Policies and Procedures, as well as other documentation detailing officer training, along with an Affidavit of Police Chief Patrick Nealon certifying that they are true and accurate copies. (Defendants' Motion for Summary Judgment, Exhibit O). The Policies and Procedures dictate the procedure for domestic violence is to "respond without delay." This is contrary to Dr. O'Keefe's opinion that Officer Brewer should have determined a plan of action prior to entering the premises, and taken his time to assess and observe the scene before confronting Mr. Hanson.

In her Response to Defendants' Motion for Summary Judgment, Plaintiff argues the City of Fairview Park's failure to train and supervise its officers concerning the use of deadly force in circumstances involving the mentally ill is a municipal policy reflecting its deliberate indifference to the rights of its citizens generally, and to Mr. Hanson specifically. The Supreme Court has said inadequate training can justifiably be said to represent city policy when the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably said to have been deliberately indifferent to the need. *Harris*, 489 U.S. at 390. In this case, Plaintiff has pointed to no evidence that the City of Fairview Park was aware of a need for additional training with respect to mentally disturbed individuals, and has not produced any evidence suggesting events such as this one were commonplace. In fact, Plaintiff has not pointed to any other instance concerning a Fairview Park police officer and the use of deadly force against a mentally disturbed or mentally ill individual, suggesting that there was no obvious need for the City to provide additional training with regard to these specific circumstances. The Fairview Park Police Department has specific polices in place for dealing with domestic disturbances, the use

of force, and responding to 911 calls, and the fact that a policy detailing the use of deadly force in circumstances involving the mentally ill is not a part of the Policies and Procedures manual does not rise to a level constituting deliberate indifference.

The Fairview Park Police Department's Policy for Firearms Safety and Training provides all members of the Police Department must successfully complete an annual Firearms Re-qualification Program, in accordance with Section 109.743 of the O.R.C.  In this case, Sergeant Martin received a significant amount of training over and above the required amount, as evidenced by Exhibit O of Defendants' Motion for Summary Judgment.  Exhibit O includes a detailed list of over thirty seminars, schools, and training sessions attended by Sergeant Martin, with topics including understanding mental illness, police supervision, and firearms instruction, among others.  Officer Brewer testified he received ongoing training concerning firearms and the use of force, as well as additional training in many other areas.  Although he testified the City of Fairview Park does not have a specific curriculum with regard to dealing with mentally disturbed individuals, he did state the topic was reviewed during field training.  In *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005), the Court held that where the officers in question were trained at the state police academy and were also trained for two months by sergeants, Plaintiff failed to show the training programs in place were inadequate.  Although Dr. O'Keefe opines the City of Fairview Park has inferior training, policies, and practices, there appears to be no legal basis for these conclusions, as the City's policies and requirements are in compliance with what is required under Ohio law. The evidence provided by Defendants in this case supports the conclusion that the training required and provided by the Fairview Park Police Department is more than adequate.

The Sixth Circuit has held in some instances, under appropriate circumstances, even a single act or decision may qualify as an official government policy, even if it is unprecedented and unrepeated. *Holloway v. Brush*, 220 F.3d 767, 778 (6th Cir. 2000) (en banc).  In such a case, there must be proof that the incident was caused by an existing, unconstitutional municipal policy, and that such policy can be attributed to a municipal policymaker. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).  Decisions by subordinate employees, however, do not necessarily reflect official policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477 (1986).  In this case, even if Plaintiff is able to prove the officers' actions were unconstitutional, neither Sergeant Martin nor Officer Brewer are policy-makers for the City of Fairview Park. Additionally, both Sergeant Martin and Officer Brewer were exercising discretion during the course of performing specific duties as police officers.  In *Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005), the Court found a jail's shift commander and an on-call doctor were not policy-makers for the county, and were exercising discretion while performing particular jobs unrelated to broad goals.

A municipality cannot be held liable under § 1983 simply upon the theory of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  Additionally, a plaintiff cannot simply assert that an isolated incident by a city employee is evidence of municipal policy or custom, as liability would then essentially rest on *respondeat superior*. *Harris*, 489 U.S. at 387.  In her Complaint, Plaintiff asserts a practice of failing to train and supervise by Defendant City of Fairview Park; however, Plaintiff offers no evidence of any custom or practice, and seems to rely solely on the conclusions contained in Dr. O'Keefe's report.  Plaintiff is unable to point to another instance with a similar fact pattern, suggesting that this is an isolated incident,

17

and not a series of ongoing events or a pattern of behavior on the part of the city. Even if Officer Brewer's or Sergeant Martin's conduct is determined to be a constitutional violation, that determination, in and of itself, is insufficient to establish evidence of an unconstitutional custom on the part of the city. The City of Fairview Park has numerous training programs in place, as well as specific policies and procedures for dealing with nearly every type of foreseeable event. (See Defendants' Motion for Summary Judgment, Exhibit O).

Based on this evidence, there is no deficiency in any training program utilized by the City of Fairview Park, nor is there any custom of failing to train or supervise. In a recent Sixth Circuit decision, the Court held that where Plaintiff did not show the county knew of misconduct by its employees and failed to respond, Plaintiff did not show deliberate indifference on the part of the county. *Ciminillo v. Streicher*, 494 F.3d 461, 469-470 (6th Cir. 2006). Although the Court has fully considered Dr. O'Keefe's report, his report fails to establish the alleged insufficient training and supervision constitutes a custom or policy of indifference of the Fairview Park Police Department. Under Federal Rules of Evidence, a trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, (1993). The objective of *Daubert's* "gatekeeping" function is to ensure the reliability and relevancy of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Supreme Court has held this "gatekeeping" obligation applies not only to scientific testimony, but to all expert testimony. *Id*. at 147. In the case at bar, Dr. O'Keefe's expert report fails to establish any imposition of duty, as it contains suggestions that are without the force of law. Although this Court finds Dr. O'Keefe's report relevant to the issues in this case, it is not reliable because it cites to standards

not mandatory under Ohio law. Accordingly, Defendants' Motion for Summary Judgment with regard to Plaintiff's claims against the City of Fairview Park is granted.

## **CONCLUSION**

In light of the parties' conflicting versions of events leading up to the shooting, the Court denies summary judgment for Defendants' with respect to Defendant Justin Brewer on the § 1983 claim. Additionally, the Court is unable to determine whether Officer Brewer violated Plaintiff's constitutional right, and, therefore, cannot grant him qualified immunity. There is not, however, a genuine issue of material fact whether the policies and training of the City of Fairview Park are inadequate, whether the city made a conscious decision not to provide adequate training, and whether these inadequate policies proximately caused Mr. Hanson's death. Thus, the Court grants summary judgment to Defendant City of Fairview Park.

Since Plaintiff cannot establish any liability with regard to Sergeant Martin, and there are no genuine issues of material fact relating to him, the Court grants summary judgment with respect to Plaintiff's supervisory § 1983 claim and the state law claims against Defendant John Martin.

IT IS SO ORDERED.

  S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

July 16, 2008